UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA FOR THE USE OF TERRY BEDFORD CONCRETE CONSTRUCTION, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARGONAUT INSURANCE COMPANY, <br><br> Defendant. | Case No. 1:23-cv-00130-CDB <br><br> FINDINGS AND RECOMMENDATIONS TO GRANT CROSS CLAIMANT ARGONAUT INSURANCE COMPANY'S MOTION FOR DEFAULT JUDGMENT AGAINST RMA GEOSCIENCE, INC. <br><br> (Doc. 22) <br><br> FINDINGS AND RECOMMENDATIONS ON STIPULATION TO DISCHARGE AND DISMISS CROSS CLAIMANT ARGONAUT INSURANCE COMPANY <br><br> (Doc 42) <br><br> **14-DAY DEADLINE** <br><br> Clerk of Court to Randomly Assign a District Judge |
| ARGONAUT INSURANCE COMPANY, <br><br> Cross Claimant, <br><br> v. <br><br> UNITED STATES OF AMERICA FOR THE USE OF TERRY BEDFORD CONCRETE CONSTRUCTION, INC, *et al*. <br><br> Cross Defendants. | |

1

Pending before the Court is (1) Cross Claimant Argonaut Insurance Company's ("Argonaut") motion for default judgment against Cross Defendant RMA GeoScience, Inc. ("RMA"), and (2) the stipulation of all parties who have appeared (*i.e.*, not including RMA) to discharge and dismiss Argonaut. (Docs. 22, 42).  Because at least one party has not consented to the Undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c), the Clerk of Court will be directed to randomly assign a district judge to whom these findings and recommendations will be submitted.[1]  Having considered Argonaut's motion for default judgment and the appearing parties' stipulation, the Undersigned will recommend that the Court grant all relief as requested by the parties.

**Background**

On January 25, 2023, Plaintiff/Cross-Defendant the United States of America for the use of Terry Bedford Concrete Construction, Inc. ("Terry Bedford") filed a complaint against Argonaut seeking to recover pursuant to a Miller Act Payment Bond.  (Doc. 1); 40 U.S.C. §§ 3131-3134.  The complaint alleges on or about September 5, 2020, Thunder, Inc., which conducts business under the name Escobar Construction, entered into a contract in writing with the United States of America, to furnish materials and perform the labor for construction at the Bakersfield National Cemetery ("the Project").  *Id*. at ¶¶ 4, 6-7.  On or about November 20, 2020, Thunder, Inc., and Argonaut, as surety, executed and delivered a bond to the United States of America in the amount of $1,336,666.00, conditioned as required by the Miller Act, for the protection of all persons supplying labor and materials in the prosecution of the work provided in the contract.  *Id*. at ¶¶ 3, 8; (Doc. 7-1 at ¶ 11).

On or about March 5, 2021, Thunder, Inc. entered into a written subcontract with Terry Bedford, wherein Terry Bedford agreed to furnish certain labor and equipment for the Project.  (Doc. 1 at ¶ 9).  On or about April 21, 2021, and continuing thereafter until January 26, 2022, Terry Bedford undertook performance of the subcontract and alleges it performed additional labor for the Project.  *Id*. at ¶ 10.  Terry Bedford claims it is owed $84,342.40 plus interest for the work performed and

---

[1] *See Robert Ito Farm, Inc. v. County of Maui*, 842 F.3d 681, 686 (9th Cir. 2016) ("It is clear [under sec. 636] that the named parties to a federal suit must consent for a magistrate judge to have jurisdiction over the action."). S*ee also Matter of Lit. of Riot of Sept. 22, 1991 at Max. Sec. Unit of Mont. State Prison*, 85 F.3d 637 (9th Cir. 1996) ("before a magistrate judge can exercise jurisdiction pursuant to § 636(c), <u>all parties</u> must consent.") (emphasis in original) (Table).

materials and equipment it furnished. *Id*. at ¶¶ 10-11.  On or about April 21, 2022, Thunder, Inc., repudiated the subcontract agreement in its entirety. *Id*. at ¶ 12.

On or about September 30, 2022, Thunder, Inc. filed a Chapter 11 petition in the U.S. Bankruptcy Court for the Central District of California. *Id*. at ¶ 14.  Thereafter, on or about November 23, 2022, Terry Bedford sent a written "Notice of Non-Payment and Claim Against Miller Act Payment Bond" to Thunder, Inc. and Argonaut in the amount of $84,342.20 and requested interest, court costs, and attorney's fees as allowed by law. *Id*. at ¶ 15.

On March 8, 2023, Argonaut filed a cross claim in interpleader against Terry Bedford, Marina Landscape, Inc., Armadillo Concrete Resurfacing, RMA, Marz Remodeling, and 7J Construction (collectively "Cross Defendants").  (Doc. 7-1).  Argonaut claims the original penal sum of the Miller Act Payment Bond was $1,336,666.00. *Id*. at ¶ 12.  Argonaut further asserts "[v]arious claimants have made claims against the Miller Act Payment Bond alleging that they have not been paid for labor and/or materials they furnished on the Project." *Id*. at ¶ 13.  Argonaut claims, consistent with its obligations as an admitted Miller Act surety, it investigated and resolved the claims against the Miller Act Payment Bond totaling $1,115,227.02. *Id*.  Specifically, Argonaut asserts it issued the following payments: (1) $655,627.61 to Marina; (2) $135,413.97 to Mickelson Masonry, LLC; (3) $135,924.45 to Shea Incorp.; (4) $175,156.54 to Sierra Construction & Excavation, Inc.; and (5) $13,104.45 to Victor Stanley, Inc. *Id*.  Argonaut contends that having resolved these valid claims, the penal sum of the Miller Act Payment Bond has been reduced to $221,438.98. *Id*. at ¶ 14.

Subsequently, Argonaut has received unresolved claims totaling $777,717.17 against the Miller Act Payment Bond. *Id*. at ¶ 15.  Specifically, Argonaut contends it presently has the following claims against the Miller Act Payment Bond: (1) $84,342.40 from Terry Bedford; (2) $133,129.42 from Marina; (3) $250,014.35 from Armadillo Concrete Resurfacing[2]; (4) $18,000.00 from RMA; and (5) $292,231.00 from Marz Remodeling. *Id*.

On May 9, 2023, Argonaut filed a motion for order to deposit interpleader funds pursuant to Fed. R. Civ. P. 67.  (Doc. 19).  That same day, Argonaut filed a request for entry of default as to RMA

---

[2] Argonaut purports that Armadillo Concrete Resurfacing and 7J Construction are the same claimant.  (Doc. 7-1 at p. 4, n. 1).

3

and the Clerk of Court recorded an entry of default against RMA on May 10, 2023. (Docs. 18, 21). Argonaut filed the instant motion for default judgment against RMA on May 16, 2023. (Doc. 22). On May 26, 2023, Terry Bedford filed an opposition and Argonaut filed a reply to Terry Bedford's opposition on June 2, 2023. (Docs. 25, 29). On June 22, 2023, the Undersigned issued an order granting Argonaut's motion for order to deposit interpleader funds. (Doc. 33). Thereafter, the Court received a deposit of $221,438.98. (Doc. 39).

On September 5, 2023, Argonaut filed a request for entry of default as to 7J Construction, and the Clerk of Court recorded an entry of default against 7J Construction on September 6, 2023. (Docs. 40-41). On October 9, 2023, Argonaut filed a stipulation for discharge and dismissal signed by all appearing parties. (Doc. 42). On November 7, 2023, Argonaut filed a notice of request for dismissal against 7J Construction pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), and the Undersigned directed the Clerk of Court to terminate 7J Construction from this action. (Docs. 47-48).

**Jurisdiction**

A. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress. *U.S. v. Summer*, 226 F.3d 1005, 1009 (9th Cir. 2000); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Argonaut asserts the Court has jurisdiction over this matter pursuant to Federal Rule of Civil Procedure 22, 28 U.S.C. § 1335, original jurisdiction, diversity jurisdiction, and supplemental jurisdiction. (Doc. 7-1 at ¶ 9).

The Undersigned finds the Court has jurisdiction over this interpleader action pursuant to 28 U.S.C. § 1335. The statute provides district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader:

> filed by any persons, firm or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if
>
> (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if

4

> (2) The plaintiff has deposited such money or property or has paid the amount of the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

Here, Argonaut filed a cross claim in interpleader because it had possession of money, namely the aggregate remaining penal sum of the Miller Act Payment Bond, in the amount of $221,438.98. *See* (Doc. 7-1).  The amount in controversy exceeds $500 as required under 28 U.S.C. § 1335(a). Further, the adverse claimants have diverse citizenship.  Argonaut is a citizen of Illinois.  *Id*. at ¶ 1. Cross Defendants are citizens of California.  *Id*. at ¶¶ 2-6.  Finally, Argonaut has deposited the aggregate remaining penal sum of the Miller Act Payment Bond into the registry of the Court.  (Doc. 39).  As such, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1335.

B. Personal Jurisdiction

Pursuant to 28 U.S.C. § 2361, the provision for nationwide service of process, "[i]n any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of this court."  Terry Bedford filed the initial complaint on January 25, 2023.  (Doc. 1).  In April 2023, Cross Defendants Marz Remodeling, RMA, and 7J Construction were served and Cross Defendant Marina Landscape waived service of process on April 4, 2023.  (Docs. 10-13).  Accordingly, the Court has personal jurisdiction over all Cross Defendants.

**Discussion**

A. Argonauts' Motion for Default Judgment against RMA

Argonaut requests that default judgment be entered against RMA, that RMA take $0.00 for its Miller Act Payment Bond claim and forfeit said claim by way of default.  (Doc. 22).  RMA was served with the summons and complaint in this action, has not appeared or otherwise responded, and did not respond to Argonaut's motion for default judgment.  When a "stakeholder is served with process but

5

then fails to appear and make a claim to the interpleaded funds, the stakeholder waives his rights to the funds, making them available for equitable redistribution to the other stakeholders." *Wells Fargo Bank v. Magellan Owners Ass'n*., No. CV-09-00587-PHX-MHM, 2010 WL 3789327, at *4 (D. Ariz. Sep. 22, 2010). Fed. R. Civ. P. 55(a) allows the clerk of a court to enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules[.]" Following entry of default, if a party has failed to appear or set aside the default, Fed. R. Civ. P. 55(b)(2) provides that the court may enter default judgment.

A district court has discretion to grant or deny a motion for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment."). The Ninth Circuit has set out seven factors to be considered by courts in reviewing a motion for default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471–72.

Where default has been entered by the clerk of court, a court takes as true all factual allegations in the Complaint except for any allegations related to the value of damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977)). Default judgment may not be entered against a minor or incompetent individual unless such individual is represented by a guardian, conservator, or other fiduciary who has made an appearance. Fed. R. Civ. P. 55(b)(2). Further, the Servicemembers Civil Relief Act provides special requirements that must be met before a court may enter a default judgment against an individual in military service. 50 U.S.C. § 3931 (formerly cited as 50 U.S.C. § 520).

Because RMA is not a minor, incompetent, or in the military, neither Fed. R. Civ. P. 55(b)(2) nor the Servicemembers Civil Relief Act prohibit this Court from entering a default judgment against RMA. Further, the Undersigned has reviewed Argonaut's executed summons as to RMA and finds

the summons and complaint properly were served, satisfying the procedural requirements set forth in Rule 55.  *See* (Doc. 11).

    1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The cross complaint in this action pertains to competing claims totaling $777,717.17 against the Miller Act Payment Bond. (Doc. 7-1 at ¶ 15). The primary purpose of interpleader is "to protect stakeholders from multiple liability as well as from the expense of multiple litigation." *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000). Here, a default judgment would minimize prejudice to Argonaut by resolving a competing claim to the Miller Act Payment Bond, thereby protecting Argonaut from multiple liabilities and allowing Argonaut to be discharged from further liability. Moreover, if the Court does not enter default judgment as to RMA, the other cross defendant claimants would suffer delay in the resolution of their claims. Thus, this factor weighs in favor of default judgment.

    2. Merits of Plaintiff's Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors call for an analysis of the causes of action. *Eitel*, 782 F.2d at 1471–72; *see Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) (under an *Eitel* analysis, the second and third factors are often analyzed together); *Mnatsakanyan*, 2013 WL 10155707, *10 (C.D. Cal. May 14, 2013) (noting that courts often treat these two factors "as the most important" in an *Eitel* analysis).

As discussed above, Argonaut asserts various claimants have made claims against the Miller Act Payment Bond alleging that they have not been paid for labor and/or materials they furnished on the Project. (Doc. 7-1 at ¶ 13). Argonaut claims it investigated and resolved claims against the Miller Act Payment Bond totaling $1,115,227.02, but still has received unresolved claims totaling $777,717.17 against the Miller Act Payment Bond. *Id*. at ¶¶ 13-15. Argonaut has asserted that it is disinterested in the remaining penal sum of the Miller Act Payment Bond, but it cannot determine the proper beneficiaries of the Bond without potentially subjecting itself to multiple liability or litigation

7

expenses. *Id.* ¶¶ 17-18, 20.  The Undersigned finds Argonaut has sufficiently stated a claim for interpleader in its cross complaint.  Accordingly, the second and third factors weigh in favor of default judgment.

3. Sum of Money at Stake in These Proceedings

The fourth *Eitel* factor, the amount of money at stake in this action, is neutral.  Argonaut has deposited the remaining penal sum of the Miller Act Payment Bond in the amount of $221,438.98 into the registry of this Court.  (Doc. 39).  The value of the sum is substantial.  However, in interpleader actions, the sum of money at stake is typically a neutral factor when the interpleading party is not seeking damages.  *Dang v. Pontier*, No. 19-cv-01519-GPC(AHG), 2020 WL 5521133, at *4 (S.D. Cal. Jul. 22, 2020); *see Farmers New World Life Ins. Co. v. Adams*, No. 13-cv-85-BU-DLC, 2014 WL 4715521, at *4 (D. Mont. Sep. 22, 2014) ("Even if the sum of money at issue in an interpleader action is substantial, this factor is typically neutral because the interpleading party is not asserting an interest in the money or seeking damages.").

4. The Possibility of a Dispute Concerning Material Facts

"[A]llegations in a well-pleaded complaint are taken as true following the clerk's entry of default." *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005).  RMA has not answered the cross complaint.  Since Argonaut's factual allegations are presumed true in this context and RMA failed to move to set aside the clerk's entry of default (Doc. 21), no factual dispute exists that would preclude the Court from granting default judgment as to RMA.  Thus, the fifth *Eitel* factor weighs in favor of default judgment.

5. Whether the Default was Due to Excusable Neglect

The sixth *Eitel* factor, the existence of excusable neglect, also supports default judgment.  Due process requires that interested parties be given notice of the pendency of the action and be afforded an opportunity to present their objections before a final judgment is rendered. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  Here, there is no evidence that RMA's failure to appear, answer the cross complaint, or otherwise assert any claim to the Miller Act Payment Bond is the result of excusable neglect.  The Clerk of Court issued a summons as to RMA on March 16, 2023.  (Doc. 9).  RMA was served with the summons and complaint on March 28, 2023, and

Argonaut mailed RMA a copy of the summons and complaint the following day. (Doc. 11 at 4-6). Despite providing substitute service of summons and complaint on RMA and mailing the aforementioned documents, RMA has failed to appear or respond to the cross complaint in this matter. Moreover, the Court will order Argonaut to provide a copy of these Findings & Recommendations to RMA such that RMA will have an opportunity to object and establish whether its neglect was excusable. As such, the sixth *Eitel* factor weighs in favor of default judgment.

   6. Policy Favoring Decisions on the Merits

Finally, the seventh *Eitel* factor, the policy favoring judgment on the merits, typically weighs against entry of default judgment. *See* 782 F.2d at 1472 (default judgments are disfavored because "cases should be decided upon their merits whenever reasonable possible"). RMA's failure to answer Argonaut's cross complaint makes a decision on the merits "impractical if not impossible." *PepsiCo, Inc.*, 238 F. Supp. at 1177. Accordingly, this factor weighs in favor of granting default judgment.

In sum, the *Eitel* factors weigh in favor of default judgment against RMA. It is therefore recommended that Argonaut's motion for default judgment against RMA be granted.

B. Argonauts' Stipulation for Discharge and Dismissal

Pursuant to 28 U.S.C. § 2361, a district court hearing a civil interpleader action under 28 U.S.C. § 1335 "may discharge [the stakeholder] from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment" once the stakeholder has met the statutory requirements of interpleader. When the statutory requirements of 28 U.S.C. § 1335 are met and the remedies of 28 U.S.C. § 2361 are available, "the court should readily grant discharge of the disinterested stakeholder." *Wells Fargo Bank*, 2010 WL 3789327, at *4 (citing Moore's Federal Practice § 22.03(2)(a), § 22.04(6)(b)). An interpleader plaintiff is typically "discharged of full responsibility regarding the interplead[] funds when the funds have been paid into the registry of the court and the parties have had notice and opportunity to be heard." *Id*. (quoting *Central Bank of Tampa v. United States*, 838 F. Supp. 564, 567 (M.D. Fla. 1993)). "A court should readily discharge a disinterested stakeholder from further liability absent a stakeholder's bad faith in commencing an interpleader action, potential independent liability to a claimant, or failure to satisfy requirements of rule or statutory interpleader." *OM Fin. Life Ins. Co. v. Helton*, No. 2:09-cv-01989-WBS-EFB, 2010

1 WL 3825655, at *3 (E.D. Cal. Sep. 28, 2010).  *E.g.*, *Field v. United States*, 424 F. Supp. 3d 904, 910
2 (E.D. Cal. 2019) (discharging stakeholder where no identified claimants opposed discharge or
3 identified possible claims for which they had standing and failed to raise "serious charges" of bad
4 faith).

5 As set forth above, the statutory requirements of interpleader pursuant to 28 U.S.C. § 1335
6 have been met.  In support of discharge, Argonaut contends that it has no claims or interests in the
7 aggregate remaining penal sum of the Miller Act Payment Bond and has already deposited the sum
8 into the registry of the Court.  (Doc. 7-1 at ¶ 20; Doc. 39).  The Undersigned finds Argonaut has
9 shown no other interest in the litigation or bad faith in initiating the proceedings.  Moreover, Cross
10 Defendants do not oppose the discharge and dismissal of Argonaut.  (Doc. 42).  Accordingly, the
11 Undersigned shall recommend that Argonaut's request to be dismissed from this action and discharged
12 from further proceedings and from any and all liability to any person with respect to the aggregate
13 remaining penal sum of the Miller Act Payment Bond be granted.

14 Argonaut also asks for attorneys' fees and costs to compensate it for bringing this interpleader
15 action in the amount of three thousand dollars ($3,000).  *Id*.  Cross Defendants do not oppose
16 Argonaut's request for fees and costs.  *Id*.  Courts generally have discretion to award attorneys' fees to
17 a disinterested stakeholder in an interpleader action.  *Abex Corp. v. Ski's Enters., Inc.*, 748 F.2d 513,
18 516 (9th Cir. 1984), and routinely grant such awards absent a showing of bad faith, *Schirmer*
19 *Stevedoring Corp. Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 194-95 (9th Cir. 1962). *See Trs.*
20 *of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000)
21 (holding a court has broad discretion in an interpleader action, not only with respect to whether to
22 allow attorneys' fees to be deducted from the policy, but also with respect to the amount of fees to
23 which an interpleader plaintiff is entitled).  The stakeholder will typically be compensated for
24 reasonable attorneys' fees out of the interpleader fund deposited in the court.  *Tise*, 234 F.3d at 427.

25 As a general matter, a court will award fees from the proceeds whenever: "(1) the party
26 seeking fees is a disinterested stakeholder; (2) who had conceded liability; (3) has deposited the funds
27 into court; and (4) has sought a discharge from liability." *Septembertide Publ'g v. Stein & Day, Inc.*,
28 884 F.2d 675, 683 (2d Cir. 1989).  Based on the record before the Court, it appears that Argonaut has

10

met all of the criteria for being awarded attorneys' fees and costs.  There is no argument or evidence that Argonaut has any interest in the funds or that this case arises from Argonaut's wrongdoing.  Argonaut has attempted to resolve all of Cross Defendants' claims by initiating the cross complaint in interpleader.  Moreover, Cross Defendants have stipulated to Argonaut's discharge and dismissal.  Accordingly, the Undersigned finds that an award of attorneys' fees is warranted in this action. Thus, the remaining question is the amount to which Argonaut is entitled.

The Ninth Circuit has indicated that attorneys' fees in an interpleader action are limited to time expended on preparing the complaint, obtaining service of process on the claimants to the fund, obtaining default judgment, and preparing an order discharging the plaintiff from liability and dismissing it from the action.  *See Tise*, 234 F.3d at 426-27.  Because the scope of compensable expenses is limited, attorneys' fees awards to the disinterred interpleader plaintiff are typically modest.  This furthers the "important policy interest" in seeing that the fee award does not unduly deplete the fund of those entitled to it.  *Id*. at 427.

Argonaut proffers that its total fees and costs incurred in bringing this interpleader matter totals $3,000.  (Doc. 42 at 3).  The Undersigned Argonaut seeks this amount without proffering any supporting evidence or billing statements.  The burden of establishing entitlement to an attorneys' fee award lies solely with the claimant.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.").

Here, without declarations or billing statements to support Argonaut's fee request, the Undersigned cannot assess the reasonableness of the requested fee amount with respect to counsel's hourly rates or time spent litigating this matter or the cost expended by Argonaut.  However, the Court notes Argonaut likely spent reasonable costs and hours litigating this action, and Cross Defendants, who are the intended beneficiaries of the remaining penal sum of the Miller Act Payment Bond, have stipulated to Argonaut's fee request.  Further, Eastern District of California courts have generally awarded fees and costs close to the amount requested by Argonaut.  *Transamerica Life Ins. Co. v.*

*Shubin*, No. 1:11-cv-01958-LJO-SKO, 2012 WL 2839704 (E.D. Cal. Jul. 10, 2012) (awarding $7,164.25 in attorneys' fees and costs); *Wells Fargo Bank v. PACCAR Fin. Corp.*, No. 1:08-cv-00904-AWI-SMS, 2009 WL 211386 (E.D. Cal. Jan. 28, 2009) (awarding $5,575.55 in attorneys' fees and costs). Accordingly, in light of the lack of opposition thereto, consistent with Eastern District case law, the Undersigned recommends the Court, in exercising its "broad discretion" award attorneys' fees and costs in the amount requested by Argonaut, $3,000, be granted.

**Conclusion and Recommendations**

Based on the foregoing, the Clerk of Court is DIRECTED to randomly assign a district judge to this action for the purposes of reviewing these findings and recommendations.

Further, IT IS HEREBY ORDERED, Cross Claimant Argonaut Insurance Company SHALL mail a copy of these Findings and Recommendations to Defendant RMA at its last known address and SHALL file a proof of compliance within five (5) days of entry of these Findings and Recommendations.

And IT IS HEREBY RECOMMENDED:

1. Argonaut's motion for default judgment (Doc. 22) be GRANTED;
2. Cross Defendant RMA take $0.00 for its Miller Act Payment Bond claim and RMA forfeits said claim by way of default;
3. Argonaut's stipulation for discharge and dismissal of Argonaut (Doc. 42-1) be GRANTED;
4. Argonaut be exonerated and dismissed from this action, in its entirety, with prejudice, and all parties to the stipulation, and others with potential claims that have not yet been made, be forever barred, and restrained from instituting any other action against Argonaut in any court, against or in any way related to the Miller Act Payment Bond;
5. Argonaut be awarded costs and reasonable attorney fees incurred in bringing its action in interpleader in the amount of Three Thousand Dollars ($3,000), which amount shall be paid by the Clerk of the Court from the amount currently on deposit; and
6. The Court shall retain jurisdiction to issue an order/judgment pertaining to the distribution of the interpleaded funds in the event of a settlement of the interpleader cause of action by the adverse claimants to the interpleaded funds.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 17, 2023**

UNITED STATES MAGISTRATE JUDGE

13